

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

March 5, 2021

**Via ECF**
The Honorable Judge Lois Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Mendoza, et al. v. Dynasty Contracting LLC, et al.**
    **20-CV-2898 (LB)**

Dear Judge Bloom:

    Our office represents Wilson Mendoza, Bonerge Pacheco, Raul Mendoza, Jose Alberto Carias Salinas, Roger Mendoza, and Jorge Mendoza (collectively, "the Plaintiffs") and we submit this motion jointly with counsel for Dynasty Contracting LLC and Eric Li (collectively, "the Defendants"), requesting the Court's approval of the parties' settlement agreement, which was fully executed on March 5, 2021 ("Settlement Agreement"). The Settlement Agreement, attached hereto as **Exhibit 1**, was achieved through the parties' Court-annexed mediation held on January 19, 2021 with the assistance of Mediator Raymond Nardo.

    The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.**      **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

    a. **The Settlement Amount**

    The parties agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees, for the amount of $85,000.00, pursuant to an eight month payment schedule.

b. **Plaintiffs' Position**

Plaintiffs are six individuals who brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiffs alleged that, as former non-exempt employees of Defendants, that they were not paid proper overtime rates of pay when they worked in excess of forty (40) hours per week.

Plaintiffs were formerly employed by Defendants as laborers, rebar workers and concrete workers. Plaintiffs were required to perform work at various job sites located throughout New York City, including in the boroughs of Queens and Brooklyn.

Although each Plaintiff's exact dates of employment varied, each Plaintiff alleged that he was employed by Defendants for a period ranging from three months to fifteen months. Plaintiffs further alleged that they were regularly required to work fifty-eight (58) to sixty-nine (69) hours per week during their employment. However, despite working in excess of forty (40) hours per week, Plaintiffs claimed that they were paid flat daily rates of pay that did not account for their overtime hours. Plaintiffs received their pay from Defendants entirely in cash.

Lastly, all Plaintiffs alleged that they were entitled to recovery under NYLL §195 for Defendants' failure to provide proper wage notices and wage statements.

Should the NYLL wage order for miscellaneous industries have applied to Plaintiffs' overtime claims, Plaintiffs' counsel calculated that Plaintiffs could have recovered up to $48,000.00 in unpaid overtime wages (before liquidated damages or statutory penalties). However, this number assumed that each Plaintiff would be 100% successful in establishing his alleged dates of employment, alleged number of hours worked each week, and alleged rates of pay.

Although Plaintiffs were confident that they could succeed on all of their claims at trial, Plaintiffs recognized the risks of continuing litigation. In particular, Plaintiffs recognized the factual disputes as to the dates of each Plaintiff's employment and each Plaintiff's alleged number of hours worked each week and the defenses raised below. That these factual disputes would not be resolved until the time of trial, at an uncertain date in the distant future, favored agreeing to resolve their claims at mediation.

c. **Defendants' Position**

Defendants vehemently dispute Plaintiffs' allegations and contend that if they owe Plaintiffs any compensation at all, it would be minimal. Additionally, Defendants maintain that corroborating testimonial and documentary evidence demonstrate that Plaintiffs' wage-and-hour claims are largely exaggerated. In sum, there is a bona fide dispute between the parties regarding Plaintiff's wage-and-hour claims.

Specifically, the six Plantiffs worked for Dynasty Contracting as construction workers at various project sites. Based on corroborating testimony from project managers, Plaintiffs usually worked between 40 and 45 hours per week Mondays through Fridays, with a one-hour break each day in between their shifts. Moreover, Plaintiffs neglect to take into account that Dynasty Contracting often had slower business in the wintertime (approximately four months), meaning Plaintiffs did not even work 40 hours per week and often ended their shifts early. On some severe weather days (i.e, snowstorm, hail, torrential rain), work was canceled altogether and Plaintiffs did not work.

Of significance, with respect to Wilson Mendoza, Defendants contend that he was an exempt employee under the executive exemption. At all times, he managed two or more employees at each of the job sites that he worked at. In fact, he recommended to Dynasty Contracting that it should hire at least five employees, including some of the other Plaintiffs in this matter. His advice with respect to recruitment and hiring was well-regarded and trusted by Dynasty Contracting due to his experience and expertise in the construction industry. Wilson Mendoza also gave comments and critiques as to individuals who were not performing well.

Defendants also maintain that Wilson Mendoza's primary duty was to ensure that the job sites ran smoothly and that the workers working below him performed their duties safely, efficiently, and effectively. During a five day workweek, he was paid $1,250. Therefore, Wilson Mendoza clearly met the executive employee minimum salary threshold for employers with 11 or more employees in New York City in 2018 ($975 per week) and in 2019 ($1,125 per week).

With respect to the other five named Plaintiffs, Defendants contend that they are owed zero to very minimal overtime wages because they often worked only between 40 to 45 hours per week, and less than 40 hours during the winter months. Moreover, two named Plaintiffs only worked 2 months and 4 months respectively, while the other three worked about 10 to 11 months each.

Accordingly, Defendants maintain their position that corroborating testimonial evidence as well as additional documentation support their defenses. Nevertheless, in the interests of avoiding protracted litigation, Defendants agreed to settle with Plaintiffs in accordance with the Settlement Agreement (as set forth in Exhibit A) because the parties believe that it is a fair and reasonable compromise of the parties' positions.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted).

The parties have agreed to settle all claims asserted in this matter for $85,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter and the fact that the terms of the Settlement Agreement were achieved following the assistance of an experienced wage-and-hour neutral appointed by the Court, Mediator Nardo. In fact, the final settlement number of $85,000.00 that the parties ultimately accepted to resolve this matter was Mediator Nardo's proposed recommendation to the parties at the January 19, 2021 mediation. Moreover, the settlement amount falls squarely within the possible range of recovery by Plaintiffs. Even after attorneys' fees are deducted from the settlement amount, each Plaintiff stands to recover an amount greater than their alleged unpaid overtime wages, applying the NYLL wage order for miscellaneous industries. The parties had

genuine, bona fide disputes over the number of hours worked by Plaintiff, the wages paid to Plaintiffs and the dates of Plaintiffs' employment, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement.

## II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 4 of the Settlement Agreement ("Release") is narrowly-tailored to claims under the FLSA and NYLL. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

## III.    Requested Attorneys' Fees and Expenses and Distribution to Plaintiffs

### a.  Distribution to the Plaintiffs

The parties agreed to a global settlement of $85,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $55,968.00. Each Plaintiff will receive an amount proportional to his calculation of damages, which accounts for the alleged dates of his employment, the alleged hours that he worked, and the alleged pay that he received. The individual amounts to be received by each Plaintiff are included in Paragraph 1 of the Settlement Agreement.

The proposed allocation of the settlement proceeds is as follows:

| Wilson Mendoza: | $16,500.02 |
|---|---|
| Bonerge Pacheco: | $9,500.02 |

| | |
|---|---|
| Raul Mendoza: | $3,468.00 |
| Jose Alberto Carias Salinas: | $11,000.02 |
| Roger Mendoza: | $11,000.02 |
| Jorge Mendoza: | $4,500.00 |
| Helen F. Dalton & Associates, PC: | $29,031.92 |
| **TOTAL** | **$85,000.00** |

### b. Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests $1,049.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on all Defendants in this matter: $256.00
- the cost of the Court-annexed mediation held on January 19, 2021: $393.00

Plaintiffs' counsel respectfully requests one-third of the settlement less their identifiable expenses ($83,951.00), or $27,983.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $29,032.00[1].

**Settlement Amount:** $85,000.00
**Attorneys' Expenses:** $1,049.00
**Settlement less Expenses:** $83,951.00 ($85,000.00 - $1,049.00)
**Requested Attorneys' Fees:** $27,983.00 ($83,951.00 / 3)
**Total payable to Attorneys:** $29,032.00 ($27,983.00 + $1,049.00)
**Total payable to Plaintiffs:** $55,968.00 ($85,000.00 - $29,032.00)

Plaintiffs' attorneys and their clients have retainer agreements that are reduced to writing and are signed by the clients. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.,* 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs'

---

[1] Due to some minor instances of rounding to accommodate the payment plan in the Settlement Agreement, Plaintiffs' counsel will actually receive $29,031.92 (as opposed to $29,032.00), if the Settlement Agreement is approved.

counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

Additionally, as a check on Plaintiffs' counsel's contingency fee request, attached please find Plaintiffs' counsel's contemporaneous billing records and qualifications as **Exhibit 2**.

### IV. Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of careful negotiation between experienced counsel with the assistance of an experienced and qualified neutral and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement.

We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.